IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**BRANDY VAN GAASBEEK and
MICHAEL VAN GAASBEEK,**

      **Plaintiffs,**

**vs.**                      **Case No.  4:22cv38-AW-MAF**

**BRACE INTEGRATED SERVS., INC.
and FOLEY CELLULOSE LLC,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

*Pro se* Plaintiffs sued Defendants for discrimination and retaliation in violation of the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq*. ("FCRA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA").[1]  Pending before the Court is a motion for summary judgment by Foley Cellulose, LLC ("Foley") as to Plaintiff Brandy Van Gaasbeek's FCRA

---

[1] At the commencement of this action, Plaintiffs were represented by counsel.  On June 20, 2022, the Court granted counsel's motion for leave to withdraw on conflict-of-interest grounds.  *See* ECF Nos. 28, 29.

2

claim for sex discrimination (Count II) against it.[2]  ECF No. 48.  Plaintiffs

have not responded in opposition despite being warned that failure to do so

could result in the Court's accepting Defendant's evidence as true.  *See*

ECF No. 50 at 2.  After due consideration, the undersigned respectfully

**RECOMMENDS** that the motion is due to be **GRANTED**.

## I.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must

show that the nonmoving party has no evidence to support the case, or

present affirmative evidence that the nonmoving party will be unable to

prove the case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23,

106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).  If the moving party

successfully negates an essential element of the nonmoving party's case,

then the burden shifts to the nonmoving party to come forward with

evidentiary material demonstrating a genuine issue of fact for trial.  *Id*.  The

"mere existence of *some* alleged factual dispute between the parties will

---

[2] Counts I, III, and IV are asserted against Defendant Brace Integrated Services, Inc. ("Brace").  These claims are subject to Brace's motion for summary judgment, ECF No. 49.

not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505,

2509–10, 91 L. Ed. 2d 202 (1986) (emphasis in original).  A dispute is

"genuine" if the "evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id*. at 248, 106 S. Ct. at 2510 (citation

omitted).  A fact is "material" if it "might affect the outcome of the suit under

the governing law."  *Id*.  The nonmoving party must show more than the

existence of a "metaphysical doubt" regarding the material facts.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586,

106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted).

Speculation or conjecture from a party cannot create a genuine issue

of material fact.  *See Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th

Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party

will not suffice to overcome a motion for summary judgment."  *Young v.

City of Palm Bay, Fla*., 358 F.3d 859, 860 (11th Cir. 2004) (citation

omitted); *see also Celotex Corp*., 477 U.S. at 324, 106 S. Ct. at 2553.  The

nonmoving party must either point to evidence in the record or present

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56 . . . requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial.") (citation omitted); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See Celotex Corp.*, 477 U.S. at 324–25, 106 S. Ct. at 2553–54. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2552.

While *pro se* pleadings are liberally construed, "a *pro se* litigant does

not escape the essential burden under summary judgment standards of

establishing that there is a genuine issue as to a fact material to his case in

order to avert summary judgment."  *Brown v. Crawford*, 906 F.2d 667, 670

(11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show

leniency to *pro se* litigants, [they] will not serve as de facto counsel, or

rewrite an otherwise deficient pleading in order to sustain an action." *Nalls*

*v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (per

curiam) (citation and internal quotation marks omitted).

## II.    RELEVANT MATERIAL FACTS

By way of background, Plaintiffs are spouses and former mill workers.

During the relevant time period, Plaintiffs worked for Brace at the Foley

Cellulose Mill ("Mill") located in Perry, Florida.  Brace provided industrial

construction services to Foley, which owns the Mill.  Although Plaintiffs

worked for Brace, their access to the Mill was controlled by Foley.  ECF No.

49-1, Declaration of Brandon Blawusch ("Blawusch Decl.") ¶ 3; *see* ECF

6

No. 47-2, Deposition of Michael Van Gaasbeek ("M. Van Gaasbeek Depo.") at 45:4-14 & 225:6-12 & 379:23-24; ECF No. 47-1, Deposition of Brandy Van Gaasbeek ("B. Van Gaasbeek Depo.") at 112:17-25.

Plaintiffs' dispute with Foley is over its denial of Mill access to Brandy Van Gaasbeek (hereinafter "Brandy") which cost her a full-time job.  ECF No. 25 ¶¶ 18, 19, 21.  Brandy's primary duties at the Mill were as "yard manager," but, pertinent to this case, Brandy was also certified as a scaffolder.  ECF No. 47-1, B. Van Gaasbeek Depo. at 40:14-21, 39:2-4 & 250:8-13 (Brandy "rated 100 percent" as a scaffolder).  In this action, Plaintiffs allege that Foley's treatment of Brandy constituted sex discrimination because male workers were allowed to return to the Mill six months to one year after they were denied access; whereas, Brandy was permanently barred.  *Id.*

Viewing the evidence in the light most favorable to Plaintiffs, on July 9, 2020, Brandy was tasked with reporting a chlorine spill at the Mill in which some workers, including the Mill foreman, Garrett Johnson, were injured.  ECF No. 47-1, B. Van Gaasbeek Depo. at 75:22-76:1 & 76:13-15. As directed, Brandy typed up an incident report, gathered the injured

7

workers' signatures, and photographed the workers' "caustic burns." ECF No. 47-1, B. Van Gaasbeek Depo. at 77: 5-13. Brandy then sent the incident report and the photographs to Brace's "safety-guy" Greg Holt via text message. ECF No. 47-2, M. Van Gaasbeek Depo. at 69:16-70:4; ECF No. 47-1, B. Van Gaasbeek Depo. at 77:12-13. A few days later, Brandy e-mailed the report (including the photographs) to Foley representative, Paula Carlton ("Carlton"). ECF No. 47-1, B. Van Gaasbeek Depo. at 78:1-11.

Upon receipt, Carlton asked about one photo in particular that showed a man from the waist down, holding a lit cigarette in his hand. *Id.* at 78:14-16. That man was Johnson—the Mill foreman. *See id.* at 78:17-19. Smoking at the Mill is strictly prohibited under Foley's safety policies. *Id*. at 79:24-81:2. After some discussion between Foley and Brace, Foley permanently "gate locked"[3] Johnson from the Mill for violating Foley's no tobacco policy. *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 73:16-18.

---

[3] According to Plaintiffs, "gate lock" occurs when an employee's access to the Mill is terminated. ECF No. 44-3 (SEALED) at 2.

Case No. 4:22cv38-AW-MAF

The Monday after the spill (July 13, 2020), Brandy arrived at the Mill for work, but she was told that she, too, was "gate locked."  ECF No. 47-1, B. Van Gaasbeek Depo. 110:2-20.  *Id*. 110:20.  No contemporaneous explanation for Brandy's gate lock was provided beyond what seems to be a general understanding that she "should have known better than to submit a photograph to Foley Cellulose with an employee smoking in it."  ECF No. 47-2, M. Van Gaasbeek Depo. 97:18-22.  In its supporting memorandum, Foley says that it gate locked Brandy because she failed to report Johnson's smoking violation as required by Foley's safety policies.  ECF No. 48 at 13.

Brandy admits that she did not include Johnson's smoking violation in her incident report, and she concedes that she was required to report the violation.  ECF No. 47-1, B. Van Gaasbeek Depo. at 83:19-25.   Brandy says that she did not report Johnson's smoking because she did not notice the cigarette in Johnson's hand when she took photographs of his burns.  *Id*. at 82:3-7, 23:

> It was 3:30 in the afternoon.  We had to be off by 4:00.  I had to hurry to get these reports done, get these people home, and get these clothes off them before it burned their skin even worse.  So

> I just, let me see your injuries, snap, snap, snap, snap, send it all
> in.  And then, when I was told to e-mail it to Paula Carlton, all I
> did was get on the e-mail and hit forward, send, and that was it.
> I didn't even open the e-mail again.

ECF No. 47-1, B. Van Gaasbeek Depo. at 84:2-11.  It wasn't until after her

gate lock that Brandy reviewed the photographs and noticed Johnson

holding a lit cigarette.  *Id*. at 82:3-7.

Typically, Foley allowed gate locked workers to return to the Mill after

six months to one year.  ECF No. 47-2, M. Van Gaasbeek Depo. at 79:15-

17 & 225:6-12 ("access to the mill can be restricted, and then reinstated, for

various reasons and for various lengths of time.").  In the hopes of getting

Brandy re-admitted, Michael lobbied Brace to get Foley to lift her gate lock.

*Id.* at 102.  In the meantime, Brace re-assigned Brandy part-time

administrative duties off-site at reduced hours and pay.  *Id.* at 107:24-

108:4; ECF No. 47-1, B. Van Gaasbeek Depo. at 117:12-15 (Michael told

Brandy to "Work from home right now . . . your hours will have to be cut to

20 hours a week . . . until we can get you back in the mill.").

Thereafter, the Mill's new regional manager, John McGraw

("McGraw") tried to get Foley to allow Brandy Mill access so she could

resume her duties as yard manager, as he needed someone "in the yard—

not in the office—to count material." ECF No. 47-2, M. Van Gaasbeek

Depo. at 143:5-14 & 144:4-6. However, Foley's representative, Jack

Wilkes ("Wilkes"), told Michael that Brandy would "never" be allowed back

into the Mill again. ECF No. 47-2, M. Van Gaasbeek Depo. at 96:8-9; *see*

ECF No. 47-1, B. Van Gaasbeek Depo. at 12-14 ("My understanding, [Jack

Wilkes was] a Foley employee."). According to Michael, Wilkes was very

upset that Brandy sent the photo of Johnson smoking to Foley, and he

relayed to Michael that "[Brandy's] not coming back in the mill" because

"Brandy should have known better [than to have taken] the picture." ECF

No. 47-2, M. Van Gaasbeek Depo. at 96:9 & 95:25-96:1.

On September 9, 2020, Brace terminated Brandy's employment

altogether. ECF No. 44-3 at 4-5 (SEALED). At that time, McGraw told

Michael that he had "no choice" but to let Brandy go because he needed

her to resume her full-time duties as yard manager; yet, Foley still refused

to allow Brandy access to the Mill. ECF No. 47-2, M. Van Gaasbeek Depo.

at 143:19-145:6; *see* ECF No. 47-1, B. Van Gaasbeek Depo. at 179:4-8

("Q: [W]hen you spoke to Mr. McGraw, what did he say to you? A: He told

me—I asked him why I was being terminated.  He told me because I couldn't get in the mill to do my job.").  The parties agree that Brandy could not perform her yard duties without Mill access.

After her termination, Brandy filed a charge of sex discrimination and retaliation against Brace and Foley's parent company—Georgia Pacific. ECF No. 44-3 at 4-5 (SEALED).  After investigation, the EEOC issued a Dismissal and Notice of Rights without deciding whether Brandy's claims had merit.  ECF No. 47-1 at 342.  Plaintiffs then sued Georgia Pacific and Brace for discrimination and retaliation in Florida state court.  ECF No. 1-2. Defendants removed the action to this Court on diversity grounds, and Foley was ultimately substituted for Georgia Pacific as the real party in interest.  *See* ECF Nos. 6, 15.  Plaintiffs are now proceeding on a Second Amended Complaint, asserting one claim of sex discrimination against Foley under the FCRA (Count II).  ECF No. 25.  For relief, Plaintiffs seek compensatory and punitive damages, attorney's fees and costs, reinstatement, and equitable relief.  *Id*. at 11.

### III.  DISCUSSION

Plaintiffs base their sex discrimination claim against Foley on its "disparate treatment" of Brandy as compared to its treatment of male Mill workers.  ECF 44-2 (SEALED) at 3.   The alleged disparate treatment arises from Brandy's being permanently gate locked; whereas, Foley allowed gate-locked male workers to return to the Mill after six months to one year.  ECF No. 25 ¶¶ 18, 19, 21.

The FCRA makes it unlawful to "discharge . . . or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10(1)(a) (2022).  Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act."  *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (collecting cases applying Florida law).  To survive summary judgment in an intentional discrimination case brought under the FCRA, Florida courts use the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.

Ed. 2d 668 (1973). *See, e.g.*, *Mitchell v. Young*, 309 So.3d 280, 284 (Fla. 1st DCA 2020).

*McDonnell Douglas* requires a plaintiff to make out a prima facie case of discrimination. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam). To make out a prima facie case, Plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably." *Hopkins v. St. Lucie Cty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (per curiam) (citation omitted).

Upon a plaintiff's establishing a prima facie case, a presumption arises that the employer discriminated against the employee. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  The burden then shifts to the employer to articulate a legitimate reason for the adverse action.  *Gray v. DeLoitte*, 849 F. App'x 843, 845 (11th Cir. 2021) (per curiam).  If the employer proffers a legitimate, non-discriminatory reason, then the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d

14

961, 976 (11th Cir. 2008). "The inquiry into pretext requires the court to determine, in view of all of the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered non-discriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Id*. (citation omitted).

Foley argues that it is entitled to summary judgment for three reasons. First, Foley says that it was not Brandy's employer, or joint employer, so it cannot be liable to Plaintiffs for any damages flowing from the alleged discrimination. ECF No. 48 at 18-23. Second, Foley attacks Plaintiffs' prima facie case by arguing they cannot establish (1) that Foley took adverse employment action against Brandy; (2) that Brandy was qualified for her role; or (3) that Foley treated similarly-situated male workers more favorably than Brandy. *Id*. at 24-26. Third, Foley maintains that, even if Plaintiffs made out a prima facie case, they failed to show pretext. *Id*. at 28-31.

The Court need not decide whether Foley was Brandy's employer, or joint employer, because assuming it was, Plaintiffs' sex discrimination claim

fails as a matter of law.  Plaintiffs have not made out a prima facie case of sex discrimination, and even if they had, they have not put forward any evidence to show or suggest that Foley's proffered reason for barring Brandy from the Mill was pretextual for discrimination.

The Court first considers whether the evidence supports Plaintiffs' prima facie case.  First, Foley contends that Plaintiffs cannot show that it took adverse employment action against Brandy. That is not the case. Foley subjected Brandy to adverse employment action when it gate locked her from the Mill, causing her to lose her full-time job.  An adverse employment action is not limited to "ultimate employment decisions" like "termination, failure to hire, or demotion." *See Blue v. Dunn Constr. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (per curiam) (citation and internal quotation marks omitted); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020) (per curiam) (citations omitted).  Actions that fall short of ultimate employment decisions are actionable if the employer's actions, "in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee."  *Blue*,

453 F. App'x at 884.  An employer's action is "substantial" when a plaintiff demonstrates that she "suffered a *serious and material* change in the terms, conditions, or privileges or employment."  *Id.* (citation omitted) (emphasis in original).

In this case, the parties agree that Foley's barring Brandy from the Mill made it impossible for her to carry out her full-time duties as yard manager.  Foley does not dispute that Brandy was fired because Foley refused to lift her gate lock.  The gate lock, therefore, seriously and materially affected Brandy's status as an employee at the Mill.  Thus, the gate lock constituted an adverse employment action.

As a corollary to its "no adverse employment action" argument, Foley maintains that the gate lock does not qualify because Brace continued to employ Brandy albeit at a reduced rate, part-time.  ECF No. 48 at 25.  In other words, Foley contends that Brandy's demotion does not constitute an adverse employment action.  That is not correct.  *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1316 (11th Cir. 2007) ("A demotion to a lower-paying position is an adverse employment action.").  Brandy's demotion, which is directly connected to the gate lock,

qualifies as adverse employment action for summary judgment purposes. Accordingly, the undersigned finds that the adverse employment action prong of Plaintiff's prima facie case is satisfied.

With respect to the qualification prong, Foley argues that Brandy's failure to report Johnson's smoking at the Mill was disqualifying conduct. ECF No. 48 at 25-26. The Court finds this argument weak because McGraw attempted to re-hire Brandy as yard manager well after the smoking incident. ECF No. 47-2, M. Van Gaasbeek Depo. at 143:5-14 & 144:4-6 (McGraw tried to get Foley to lift Brandy's gate lock because he needed her "in the yard—not in the office—to count material."). So, at least as far as job performance goes, Brandy's failure to report the smoking incident did not render her unqualified for her role as yard manager. As a result, the qualification prong is met.

Next, Foley attacks the comparator element of Plaintiff's prima facie case. Foley contends that Plaintiffs have not shown that any similarly-situated male workers were treated better than Brandy. To meet the fourth prong, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparator are "sufficiently similar, in an

18

objective sense, that they cannot reasonably be distinguished." *Lewis v. City of Union Cty., Ga.,* 918 F.3d 1213, 1218, 1228 (11th Cir. 2019) (en banc) (citation omitted). "[A] similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

Viewing the evidence in the light most favorable to Plaintiffs, Johnson was arguably similarly situated to Brandy in all material respects. Johnson and Brandy both worked at the Mill and both were certified scaffolders; Johnson and Brandy were subject to the same safety policies; they reported to the same supervisor; and they were both gate locked from the Mill for violating Foley's safety policies. It can be said, then, that Johnson and Brandy were, in an objective sense, indistinguishable. So, now the question becomes: How did Foley treat these similarly situated persons? The answer is: The same. So, although Johnson was similarly situated to Brandy, Foley did not treat him more favorably.

19

The parties agree that Foley permanently gate locked both Johnson and Brandy for safety violations arising from the same set of events, and that Foley never allowed either of them to return to the Mill.  *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 226:11-14 & 227:1-9 (Johnson and Brandy's access to the Mill was the same after the gate lock).  Thus, the undisputed evidence shows that Foley treated Brandy and Johnson similarly in all material respects, conducting exactly the same disciplinary action against each one. The end result was the same for the man and the woman, the plaintiff and the comparator.

As for Plaintiffs' allegations that other banned male workers (apart from Johnson) were able to return to the Mill after six months to one year, the record provides some support for this.   First, Michael testified that Foley had banned a male Mill worker named Tommy "for life.  But he got back into the mill about a year later."  ECF No. 47-2, M. Van Gaasbeek Depo. at 105:5-9.  Michael's testimony about Tommy seems to be supported by a declaration submitted by Foley's Senior Human Resources Manager, Lauren Hickman.  In Exhibit 1 to her declaration, Hickman lists banned Mill workers, which includes a person named "Tommy" (last name

20

redacted) "banned for CS violation" on an unspecified date, then "cleared to return 9-16-19." ECF No. 47-4 at 12, Declaration of Lauren Hickman ("Hickman Decl."), Ex. 1. The list of banned workers also includes a person named "Patrick" who was banned on "2/1/17" for "purposely violat[ing] safety rules by crossing [a] danger barricade." *Id.* Patrick was subsequently "reinstated" on "11/18/2018." *Id.* So, there is evidence that Foley allowed at least two gate-locked male workers to return to the Mill after the workers had been banned for safety violations.

That said, Plaintiffs have not provided any evidence to show that Tommy, Patrick, or any other re-instated male worker was similarly situated to Brandy in all material respects. Plaintiffs have not shown that these workers engaged in the same basic conduct as Brandy; that they were subject to the same employment policy, guideline, or rule as Brandy; that they were under the jurisdiction of the same supervisor as Brandy;[4] or that they shared Brandy's employment or disciplinary history beyond Tommy's

---

[4] Hickman's declaration reflects that Tommy and Patrick worked for W.G. Yates, not Bates. *Se* ECF No. 47-4 at 12, Hickman Decl. Ex.1.

permanent gate lock that was later lifted. Thus, Plaintiffs have not satisfied the comparator prong necessary for making out a prima facie case of sex discrimination under *McDonnell Douglas.*

Yet, even if Plaintiffs made out a prima facie case, Plaintiffs have not produced any evidence to show pretext.  Foley says that it revoked Brandy's access to the Mill because she did not report Johnson's smoking as required by its safety policies. ECF No. 48 at 28-30.   Brandy admits that she had a duty to report Johnson's smoking and that she failed to do so.   ECF No. 47-1, B. Van Gaasbeek Depo. at 49:5-9.   And, although Brandy testified generally that "[t]here's no females . . . that's ever been gate-locked," when pressed, Brandy conceded that she might be aware of one other female who was gate locked but admitted that she did not "personally know."  ECF No. 47-1, B. Van Gaasbeek Depo. at 313:2-3, 7-10.   This testimony is not sufficient to create a genuine issue on pretext.

To show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. BP Oil Co.,* 32 F.3d 520, 526 (11th Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). In evaluating a summary judgment motion, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs,* 106 F.3d at 1538 (internal quotations and citations omitted).

In the case at bar, Plaintiffs have not submitted or referred to any evidence that Defendant's proffered reason for Brandy's gate lock was false or pretextual. *See* ECF No. 47-4, Hickman Decl. ¶ 8 (attesting that more than half gate-locked workers were male). To the contrary, Brandy

23

confirmed that she failed to report the safety violation that Foley says led to her gate lock.  And, Brandy also testified that she was aware that some male gate-locked employees were denied access to the Mill beyond six months to a year just like she was.  ECF No. 47-1, B. Van Gaasbeek Depo. at 321:1-12.

Plaintiffs have also not demonstrated any weakness, implausibility, inconsistency, incoherency, or contradiction in Foley's proffered reason such that a reasonable fact finder could find that Foley's given reason for Brandy's permanent gate lock lacks credence.  Instead, Plaintiffs agree that violating Foley's no tobacco policy was a "pretty serious violation," because, as Michael put it, "The place could blow up . . . It's a ticking time bomb."  ECF No. 47-2, M. Van Gaasbeek Depo. at 74:2-9.  However, a discrepancy between Foley's contemporaneous explanation for Brandy's gate lock and the one Foley proffers at summary judgment does exist.  In its supporting memorandum, Foley contends that it gate locked Brandy because she failed to report Johnson's smoking violation.  Yet, Plaintiffs testified that, at the time, Foley told Michael that Brandy was permanently barred chiefly *because* she sent the photograph to Foley.  While Plaintiffs' testimony undermines

24

Foley's present argument that safety alone was the motivator for Brandy's gate lock, Plaintiffs' testimony does not create a genuine issue on pretext. That is because, even if Foley permanently barred Brandy because she photographed a worker holding a lit cigarette and then e-mailed that photo to Foley (which angered Wilkes), Plaintiffs have failed to rebut Foley's evidence that Brandy's permanent gate lock was unrelated to her sex. Nowhere does Brandy testify that Foley barred her from the Mill because she is a woman. *See* ECF. No. 47-1, B. Van Gaasbeek Depo.  Michael, too, does not testify that Brandy's sex had anything to do with Foley's decision to gate lock her.  *See* ECF No. 47-2, M. Van Gaasbeek Depo.  Rather, Plaintiffs' testimony is that Foley gate locked Brandy because of her actions, not because of her gender.

In sum, because Plaintiffs have not rebutted Foley's evidence supporting a non-discriminatory reason for its actions, Plaintiffs failed to create a genuine issue of material fact on the question of pretext. Accordingly, Foley is entitled to summary judgment.

## IV.    CONCLUSION

In view of the foregoing, Foley is entitled to judgment as a matter of law on Count II.  As Count II is the only claim asserted against Foley in this lawsuit, judgment should be entered in Foley's favor and Foley should be terminated from this action.

## <u>RECOMMENDATION</u>

It is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, ECF No. 48, be **GRANTED** and **JUDGMENT** entered for Foley Cellulose LLC.

**IN CHAMBERS** at Tallahassee, Florida, on June 7, 2023.


 s/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## <u>NOTICE TO THE PARTIES</u>

**This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.