IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**BRANDY VAN GAASBEEK and
MICHAEL VAN GAASBEEK,**

      **Plaintiffs,**

**vs.**                          **Case No.  4:22cv38-AW-MAF**

**BRACE INTEGRATED SERVS., INC.
and FOLEY CELLULOSE LLC,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

*Pro se* Plaintiffs sued Defendant employers for discrimination and

retaliation in violation of the Florida Civil Rights Act, Fla. Stat. § 760.01, *et*

*seq*. ("FCRA") and the Family and Medical Leave Act of 1993, 29 U.S.C. §

2601*, et seq*. ("FMLA").[1]  Pending before the Court is a motion for summary

judgment by Brace Integrated Services, Inc. ("Brace") with respect to the

three claims asserted against it—Count I (FCRA sex discrimination claim

---

[1] At the commencement of this action, Plaintiffs were represented by
counsel.  On June 20, 2022, the Court granted counsel's motion for leave to
withdraw on conflict-of-interest grounds.  *See* ECF Nos. 28, 29.

by Brandy Van Gaasbeek); Count III (FCRA retaliation claim by Michael

Van Gaasbeek); and Count IV (FMLA claims by Michael Van Gaasbeek).[2]

ECF No. 49.  Plaintiffs have not responded in opposition despite being

warned that failure to do so could result in the Court's accepting

Defendant's proffered evidence as true.  *See* ECF No. 50 at 2.  After due

consideration, the undersigned respectfully **RECOMMENDS** that the

motion is due to be **GRANTED IN PART** and **DENIED IN PART**.

## I.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must

show that the nonmoving party has no evidence to support the case, or

present affirmative evidence that the nonmoving party will be unable to

prove the case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23,

106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).  If the moving party

successfully negates an essential element of the nonmoving party's case,

then the burden shifts to the nonmoving party to come forward with

---

[2] Count II (FCRA sex discrimination claim) is asserted by Brandy Van Gaasbeek against Foley Cellulose LLC ("Foley").  That claim is the subject of Foley's motion for summary judgment, ECF No. 48.

Case No. 4:22cv38-AW-MAF

evidentiary material demonstrating a genuine issue of fact for trial. *Id*. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248, 106 S. Ct. at 2510 (citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted).

Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla*., 358 F.3d 859, 860 (11th Cir. 2004) (citation

omitted); *see also Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553.  The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.   *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56 . . . requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial.") (citation omitted); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that the nonmoving party must prove.  *See Celotex Corp.*, 477 U.S. at 324–25, 106 S. Ct. at 2553–54.  A motion for summary judgment should be granted if

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2552.

While *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

## II.    RELEVANT MATERIAL FACTS

This case involves a dispute over Defendants' termination of Plaintiffs' employment in 2020.  By way of background, Plaintiffs are spouses and former mill workers.  During the relevant time period, Brace employed Plaintiffs to work full-time at Foley's Cellulose Mill ("Mill") in Perry, Florida, where Brace provided industrial construction services,

6

including scaffolding services.  Although Plaintiffs were hired—and ultimately fired—by Brace, their access to the Mill was controlled by Foley. ECF No. 49-1, Declaration of Brandon Blawusch ("Blawusch Decl.") ¶ 3; *see* ECF No. 47-2, Deposition of Michael Van Gaasbeek ("M. Van Gaasbeek Depo.") at 45:4-14 & 225:6-12 & 379:23-24; ECF No. 47-1, Deposition of Brandy Van Gaasbeek ("B. Van Gaasbeek Depo.") at 112:17-25.

Viewing the evidence in the light most favorable to Plaintiffs, Brandy Van Gaasbeek (hereinafter "Brandy") worked full-time at the Mill as yard manager, and, although Brandy did not perform any scaffolding duties at the Mill, she was certified to do so.  ECF No. 47-1, B. Van Gaasbeek Depo. at 40:14-21, 39:2-4 & 250:8-13 (Brandy "rated 100 percent" as a scaffolder).  Brandy's husband, Michael Van Gaasbeek (hereinafter "Michael"), was the project manager for the Mill.  *Id.* at 42:10-15; ECF No. 47-2, M. Van Gaasbeek Depo. at 45:4-14.  As site manager, Michael supervised the Mill, including its foreman, Garrett Johnson ("Johnson"), and, at times, Brandy.  ECF No. 47-1, B. Van Gaasbeek Depo. at 41:14-23.

The events giving rise to this lawsuit occurred on July 9, 2020, when a chlorine spill at the Mill injured some workers, including Johnson.  ECF No. 47-1, B. Van Gaasbeek Depo. at 75:22-76:1 & 76:13-15.  At the time of the spill, Michael was off-site, so Brandy was instructed to report the spill and injuries to Brace and Foley.  *Id*. at 76:25-77:3.   As directed, Brandy typed up an incident report, gathered the injured workers' signatures, and photographed the workers' "caustic burns."  *Id*. at 77: 5-13.  Brandy then sent the incident report and the photographs to Brace's "safety-guy" Greg Holt via text message.  ECF No. 47-2, M. Van Gaasbeek Depo. at 69:16-70:4; ECF No. 47-1, B. Van Gaasbeek Depo. at 77:12-13.  A few days later, Brandy e-mailed the report (including the photographs) to Foley representative, Paula Carlton.  ECF No. 47-1, B. Van Gaasbeek Depo. at 78:1-11.

Upon receipt, Carlton asked about one photo in particular that showed a man from the waist down, holding a lit cigarette in his hand.  *Id.* at 78:14-16.  That man was Johnson (the Mill foreman). *See id.* at 78:17-19.  Smoking at the Mill is strictly prohibited under Foley's safety policies.  *Id*. 79:24-81:2.  After some discussion between Foley and Brace, Foley

permanently "gate locked"[3] Johnson from the Mill for violating Foley's no

tobacco policy.  *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 73:16-18.

After Johnson's gate lock, Brace re-assigned Johnson to full-time

scaffolding work at other Brace job sites.  *Id.* at 212:5-9 & 103:19-22; ECF

No. 47-1, B. Van Gaasbeek Depo. at 309:24-310:2 ("They would not let

[Garrett] back in the gate for the smoking policy, but Brace kept him

employed, and sent him to Clearwater, to Tallahassee, . . . he got to go to

three or four different places.").

The Monday after Johnson was gate locked, Brandy was also gate

locked from the Mill.  ECF No. 47-1, B. Van Gaasbeek Depo. at 110:2-8,

20.  No contemporaneous explanation for Brandy's gate lock was provided

beyond a general understanding that she "should have known better than

to submit a photograph to Foley Cellulose with an employee smoking in it."

ECF No. 47-2, M. Van Gaasbeek Depo. at 97:18-22.  In its supporting

memorandum, Brace says that Foley gate locked Brandy because she

---

[3] According to Plaintiff, "gate lock" occurs when an employee's access to
the Mill is terminated.  ECF No. 44-3 (SEALED) at 2.

failed to report Johnson's smoking at the Mill as required by Foley's safety policies.  ECF No. 49 at 5 ¶ 12.

After she was gate locked, Brandy asked Brace to re-assign her to other job sites, arguing that she was more qualified than Johnson to do the work that he had been assigned.  ECF No. 47-1, B. Van Gaasbeek Depo. at 197:3-6 ("So, like I explained to them, well, I'm certified to drive the lull. I'm actually more certified than [Johnson] is. Send me. I can go work it."). Brace did not re-assign Brandy to another job site.  Johnson ultimately quit his scaffolding position because he did not like being "on the road."  *Id.* at 103:20-21.

Typically, Foley allowed gate locked workers to return to the Mill after six months to one year.  ECF No. 47-2, M. Van Gaasbeek Depo. at 79:15-17 & 225:6-12 ("access to the mill can be restricted, and then reinstated, for various reasons and for various lengths of time.").  In the hopes of getting Brandy re-admitted, Michael lobbied Brace to get Foley to lift her gate lock. *Id.* at 102.  In the meantime, Brace re-assigned Brandy part-time administrative duties off-site at reduced hours and pay.  *Id.* at 107:24-108:4; ECF No. 47-1, B. Van Gaasbeek Depo. at 117:12-15 (Michael told

Brandy to "Work from home right now . . . your hours will have to be cut to 20 hours a week . . . until we can get you back in the mill.").

On September 9, 2020, Brace terminated Brandy's employment altogether.  ECF No. 44-3 at 4-5 (SEALED).  At that time, the Mill's new regional manager, John McGraw, told Michael that he had "no choice" but to let Brandy go because he needed her to resume her full-time duties as yard manager; yet, Foley still refused to allow Brandy access to the Mill. ECF No. 47-2, M. Van Gaasbeek Depo. at 143:19-145:6 & 144:24-145:3. The parties agree that Brandy could not perform her yard duties without Mill access.

After Brandy was fired on September 9, 2020, Brace launched an internal investigation into the couple's activities after Brandy's gate lock. ECF No. 49-1, Blawusch Decl. ¶¶ 12-15.  As a result of its investigation, Brace discovered that Michael failed to notify Brace that Foley had gate locked Brandy on July 13, 2020; that Brandy had submitted time sheets for full-time work after July 13, even though she had been reduced to part-time duties; that Michael had approved full-time pay for Brandy's part-time work; that Michael failed to return company property (a filing cabinet and

employee files) provided to Brandy prior to her termination; and that Michael had lied to management about having possession of the company property when asked to return it.  *Id.*

Contemporaneous with the Mill's internal investigation, sometime in mid-October 2020, Michael informed his supervisors that he would need to take medical leave to undergo neck surgery.  ECF No. 47-2, M. Van Gaasbeek Depo. at 173:22-174:18. Michael's neck injuries had been diagnosed years earlier, and his medical provider had informed him that recovery from surgery would take six months to one year.  *Id.* at 160:15-161:8.  Notwithstanding his need for surgery, Michael "ke[pt] putting [it] off." *Id.* at 163:2-24.  Moreover, Michael never asked Brace for medical leave. *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 159:24-160:2 (Q: Did you, at any point, reach out to Human Resources, to let them know that you needed to take leave under the Family Medical Leave Act? A: No, because I wasn't ready.").  Michael did, however, notify his supervisors mid-October 2020 that he would need surgery "at some point" in the future, but Michael never scheduled a date certain for the procedure.  *Id*. at 170:5-8 & 19-21. When asked whether he intended to have surgery in 2020, Michael

testified, "No . . . I didn't know when I was going to do it. . .  I'll tell you

honestly there, I'm afraid to get cut open."  ECF No. 47-2, M. Van

Gaasbeek Depo. at 170:24-171:3.[4]

Six weeks after she was let go, Brandy filed a charge of sex

discrimination[5] and retaliation against Brace and Georgia Pacific—Foley's

parent company. ECF No. 44-3 at 4-5 (SEALED).  Two weeks after Brandy

filed her EEOC charge of discrimination against Brace (November 4, 2020),

---

[4] Brandy testified that "Brace, at the time, wouldn't allow [Michael] to take the time off he needed" for neck surgery.  ECF No. 47-1, B. Van Gaasbeek Depo. at 209:2-4.  Yet, she does not give a date when Michael asked for time off. In light of Michael's testimony that he did not intend to undergo surgery in 2020, Brandy's vague testimony is not sufficient to create a genuine issue about whether Brace interfered with Michael's FMLA rights.

[5] At her deposition, Brandy testified that non-Brace employee, Bill Blass, had sexually harassed her on two occasions in 2018 while at the Mill. ECF No. 47-1, B. Van Gaasbeek Depo. at 101:2-102:18.  As Bass did not work for Brace, Brace took action by reporting the harassment to Bass's employer (to Brandy's satisfaction).  *Id.* at 101:2-102:18.  Beyond Bass's harassment of her in 2018, Brandy says that she had generally complained about sexual harassment at work, but "nothing was done."  *Id.* at 97:17-19.  "There would be multiple times they would make ["nasty"] statements.  Get it blowing in one ear and out the other . . . . That's the construction world."  *Id*. at 100:16-19.  Brandy never reported the "nasty" comments to Human Resources.  *Id*. at 100:19-21.  No allegations about alleged sexual harassment on the job appear in the Complaint.  *See* ECF No. 25.

13

Brace terminated Michael's employment.  ECF No. 44-9 (SEALED).  Brace told Michael that it was letting him go because (1) he had falsified Brandy's timesheets after she was gate locked; (2) he failed to return company property; and (3) he lied about having possession of company property when asked to return it.  ECF No. 49 at 6-7, 10-11.  In his EEOC charge dated February 21, 2021, Michael alleges that the real reason Brace terminated him was "in retaliation for [his] marital status to [Brandy], in addition to his cooperation as a witness with her charge of discrimination." ECF No. 44-3 (SEALED) at 8.  In their amended complaint, Plaintiffs allege that Brace fired Michael because he "requested medical leave to obtain care for his serious health concern."   ECF No. 25 ¶ 57.

Plaintiffs subsequently sued Brace and Georgia Pacific for discrimination and retaliation in Florida state court.  ECF No. 1-2. Defendants removed the action to this Court on diversity grounds, and Foley was substituted for Georgia Pacific as the real party in interest.  *See* ECF Nos. 6, 15.  Plaintiffs are now proceeding on a Second Amended Complaint, in which they assert three claims against Brace (Count I, Count III, and Count IV).  ECF No. 25.  For relief, Plaintiffs seek compensatory

14

and punitive damages, attorney's fees and costs, reinstatement, and equitable relief.  ECF No. 25 at 11.

### III.   DISCUSSION

### A.   Brandy's FCRA Sex Discrimination Claim (Count I)

Plaintiffs base their sex discrimination claim against Brace on its alleged "disparate treatment" of Brandy as compared to its treatment of male Mill workers.  *See* ECF 44-3 (SEALED) at 3.   Specifically, Plaintiffs complain that Brace demoted Brandy from full-time to part-time work after she was gate locked from the Mill, ECF No. 47-1, B. Van Gaasbeek Depo. at 117:13-15; whereas, Brace re-assigned the actual violator (Johnson—a male) to full-time work at a different job site after he was gate locked, ECF No. 47-2, M. Van Gaasbeek Depo. at 103:18-20. Plaintiffs also aver that Brandy was just as qualified (if not more so) for the scaffolding work assigned to Johnson, and that Brace discriminated against Brandy when it chose to utilize Johnson for that work instead of her.  ECF No. 47-1, B. Van Gaasbeek Depo. at 249:20-251:1.

The FCRA makes it unlawful to "discharge . . . or otherwise to discriminate against any individual with respect to compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a) (2022). Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (collecting cases applying Florida law). As such, to survive summary judgment in an intentional discrimination case brought under the FCRA, Florida courts use the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See, e.g.*, *Mitchell v. Young*, 309 So.3d 280, 284 (Fla. 1st DCA 2020).

*McDonnell Douglas* requires a plaintiff in a circumstantial case to make out a prima facie case of discrimination. *See Knight v. Baptist Hosp. of Miami, Inc*., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam). To make out a prima facie case, Plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Hopkins v. St. Lucie*

16

*Cty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (per curiam) (citation omitted).

Upon a plaintiff's establishing a prima facie case, a presumption arises that the employer discriminated against the employee. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). The burden then shifts to the employer to articulate a legitimate reason for the adverse action. *Gray v. DeLoitte*, 849 F. App'x 843, 845 (11th Cir. 2021) (per curiam). If the employer proffers a legitimate, non-discriminatory reason, then the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

Brace's argument in support of summary judgment is three-fold. First, Brace contends that Plaintiffs cannot make out a prima facie case of sex discrimination because they cannot show that Brace treated similarly-situated male employees more favorably than she. ECF No. 49 at 16-17. Second, Brace maintains that it terminated Brandy's employment for a legitimate, non-discriminatory reason—she was gate locked. *Id*. at 17-18. Furthermore, Brace says that Brandy's post-termination conduct rendered

her ineligible for re-hire.  *Id*. at 18.  Third, Brace points out that Plaintiffs have not submitted any evidence that Brace's proffered reason for firing Brandy was pretextual for sex discrimination.  *Id*. at 18-20.

Upon due consideration, the undersigned finds that Plaintiffs have made out a prima facie case for sex discrimination and that Brace has failed to rebut the presumption.  Looking at Plaintiffs' prima facie case, Brace does not challenge the first three elements:  (1) that Brandy belongs to a protected class as a female; (2) that Brandy was subject to adverse employment action (demotion then termination); and (3) that Brandy was qualified for her role—each of which the record supports.  Brace takes issue only with the fourth "comparator" prong.  Here, Brace acknowledges that Johnson fits the bill as far as having been gate locked at the same time as Brandy over the same set of events.  Yet, Brace attributes Johnson's being allowed to return to full-time work (where Brandy was not) solely to Brandy's post-termination misconduct.  ECF No. 49 at 16.  Brace says that Brandy, unlike Johnson, "spoke vulgarly toward McGraw during her termination from the Mill, refused to return company property after her termination," and "had falsified timesheets."  *Id.*  While this conduct if true

18

would support Brace's decision not to re-hire Brandy, it does not speak to her demotion or firing in the first place.

Looking at the circumstances surrounding Brandy's demotion and termination, Plaintiffs allege that Johnson—the male violator—was allowed to return to full-time work whereas Brandy was not.  Plaintiffs have also put forward evidence that Johnson and Brandy were similarly situated in all material respects.  *See Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) (per curiam).  At her deposition, Brandy testified as follows:

> I believe [Brace] definitely discriminated against me for not reassigning me for somewhere. I understand that even if the locations . . . in Clearwater were here or there or yonder, were only a couple days, you have many people who travel a couple days, and they do the work.  In my opinion, they could have offered that to me. . . .  I'm – scaffold competent.  And I've rated higher than anybody else.  Rated 100 percent on it.  I can drive a lull like there's no tomorrow.  I just feel like they chose not to utilize me. And I feel like that, even if I would have never got back in the mill, like as of to this day, I could have at least maybe survived off of two days out of town a week . . . .  And I just don't see the difference in sending a male, Garrett Johnson, to Clearwater for two, three, four days, or sending him to Tallahassee for two days, but you don't want to send me.

ECF No. 47-1, B. Van Gaasbeek Depo. at 249:20-251:1.

Thus, according to her testimony, Brandy was just as qualified as Johnson (if not more so) to be re-assigned to full-time scaffolding work after both employees were gate locked from the Mill.  Yet, Brace re-assigned Johnson to the full-time position while it demoted then terminated Brandy. To meet the fourth prong, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparator are "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis v. City of Union Cty., Ga.,* 918 F.3d 1213, 1218, 1228 (11th Cir. 2019) (en banc) (citation omitted).  "[A] similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment or disciplinary history."  *Id.* at 1227–28.

Viewing the evidence in the light most favorable to Plaintiffs, Johnson and Brandy were both Mill workers and certified scaffolders; they were both subject to the same safety policies at the Mill; they reported to the same supervisor; they were both gate locked from the Mill; and they were both

20

available to be re-assigned to other Brace worksites after they were gate locked.  It can be said, then, that Johnson and Brandy were, in an objective sense, indistinguishable.  Yet, Brace continued to employ Johnson (the actual violator and a male) full-time; whereas, Brandy (a female) was demoted to part-time administrative work then fired.  Brace did this even though Brandy asked for the work given to Johnson on the grounds that she was "more qualified" than he was.  Thus, Plaintiffs have made out a prima facie case for sex discrimination.

Now the burden shifts to Brace to rebut the presumption of discrimination.  To meet its burden, Brace maintains that it terminated Brandy's employment because Foley revoked her access to the Mill.  ECF No. 48 at 28-30.  That rationale rings hollow, however, given Brace's treatment of Johnson who was also permanently gate locked.  *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 226:11-14 & 227:1-9 (Johnson and Brandy's access to the Mill was the same after the gate lock).  While the parties agree that Brandy could not perform her duties as yard manager without access to the Mill, Brace does not explain why it did not reassign Brandy to other full-time work at another job site like it did with Johnson.

Case No. 4:22cv38-AW-MAF

This seemingly disparate treatment of Johnson and Brandy is even more striking given Brandy's testimony that she was more qualified for and would have welcomed work as a scaffolder; whereas, Johnson did not like being "on the road" and thus he quit his scaffolding position.  ECF No. 47-1, B. Van Gaasbeek Depo. at 250:14-251:1; *compare* ECF No. 47-2, M. Van Gaasbeek Depo. at 103:20-21 ("they . . . send Garrett Johnson on the road. They worked him after that incident.  Of course, he didn't like the road, so he quit scaffolding.").

While Brace's proffered reason for demoting and terminating Brandy appears to be gender-neutral on its face (gate lock from the Mill), the reason was not applied equally to Johnson and Brandy.  And, apart from Brandy's gate lock, Brace fails to point to any other evidence that would explain its decision to re-deploy Johnson full-time over Brandy.  Thus, Brace has not established that there is no genuine issue of material fact as to whether it had a legitimate, non-discriminatory reason for Brandy's demotion and termination.  Accordingly, Brace is not entitled to summary judgment on Count I.

**B.    Michael's FCRA Retaliation Claim (Count III)**

Plaintiffs' FCRA retaliation claim stems from Michael's termination

soon after Brandy filed an EEOC charge against Brace.  ECF No. 25 ¶ 32.

In short, Plaintiffs allege that Brace fired Michael in retaliation for his wife's

complaining about sex discrimination.

In moving for summary judgment, Brace argues that Count III is not a

retaliation claim but rather a discrimination claim based on marital status

under Florida Statute § 760.10(1)(a).  ECF No. 49 at 20-22.  Section

760.10(1)(a) makes it unlawful for an employer

> [t]o discharge or to fail or refuse to hire any individual, or
> otherwise to discriminate against any individual with respect to
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, pregnancy,
> national origin, age, handicap, or marital status.

Fla. Stat. § 760.10(1)(a).   The Florida Supreme Court has construed

"marital status" under § 760.10(1)(a) to be limited to "situations in which an

employer discriminates solely on an individual's status relating to marriage"

— *i.e.*, whether a person is married, single, divorced, widowed or

separated.  *Donato v. American Tel. & Tel. Co.,* 767 So.2d 1146, 1153 (Fla.

2000).  To that end, "Florida does not recognize a cause of action for

'marital status' discrimination where the basis of the claim rests on the allegedly unlawful discharge of an employee for the action by the employee's spouse." *Id*. at 1155.

Under the law cited above, Brace is correct that Count III fails to the extent Plaintiffs attempt to sue based on Michael's marital status. Nevertheless, Brace's argument here is a bit of a red herring.  The crux of Plaintiffs' complaint is not that Brace discriminated against Michael because he is married.  Rather, Plaintiffs complain that Brace fired Michael in retaliation for his being "a witness to his wife's complaints of discrimination."  ECF No. 44-3 (SEALED) at 8. Those allegations assert a claim under the anti-retaliation clause of the FCRA.  The FCRA's anti-retaliation clause states that:

> It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

24

Fla. Stat. § 760.10(7).  Florida courts follow federal case law when examining FCRA retaliation claims. *Carter v. Health Mgm't Assocs.*, 989 So.2d 1258, 1263 (Fla. 2d DCA 2008) (citations omitted).

To make a prima facie case of FCRA retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the adverse action and the protected activity.  *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1336 (11th Cir. 2021) (citation omitted).  Protected activity includes opposing unlawful employment practices or participating in any inquiry regarding an unlawful employment practice, including filing an EEOC charge. *Howard v. Walgreen Co.,* 605 F.3d 1239, 1244 (11th Cir. 2010).  In this case, Plaintiffs allege that Michael was a witness to and participant in the inquiry into Brandy's allegations of sex discrimination which she formally made to the EEOC.  Thus, Michael engaged in protected activity.  Also pertinent here, "[f]iring a person based on his [spouse's] discrimination charge is retaliation not just against the person who is fired but also against the [spouse], because the prospect of such a firing might well dissuade a reasonable worker from charging

discrimination." *Underwood v. Dep't of Fin'l Servs. of Fla.*, No. 4:11-cv-466-RH-CAS, 2012 WL 12897085, at *2 (N.D. Fla. Aug. 8, 2012) (applying Title VII) (citation and internal quotation marks omitted).  Consequently, Michael suffered an adverse employment action—termination—sufficient to support a retaliation claim if he was fired because his wife filed an EEOC charge.

Finally, looking at causation, given the close temporal proximity between the filing of Brandy's EEOC charge (October 21, 2020) and Michael's firing two weeks later (November 4, 2020), the causal connection between the protected activity and the alleged retaliation is sufficiently established.  *See Tebo v. City of DeBary, Fla.*, 784 F. App'x 727, 731 (11th Cir. 2019) (per curiam) (finding that termination "a mere 32 days after receiving [an] informal complaint is sufficient to satisfy the causation element" in Title VII and FCRA retaliation claims).  Thus, Plaintiffs have made out a prima facie case for retaliation under the FCRA.

Now the burden shifts to Brace to proffer a non-retaliatory explanation for firing Michael.  Along those lines, Brace maintains that it fired Michael because he (1) falsified Brandy's timesheets after she was gate locked; (2)

26

failed to return sensitive employee files and company property after Brandy was terminated; and (3) lied about having company property in his possession when asked to return it. *See* ECF No. 49-1, Blawusch Decl. ¶ 15 ("Based on the results of the investigation" [into the missing property], Brace's decision to terminate Michael's "employment was warranted because [he] had lied."). Brace's proffered reason—dishonesty—is a legitimate, non-retaliatory reasons for terminating an employee. Thus, Brace has rebutted the presumption of retaliation.

Plaintiffs must, therefore, come forward with some evidence that Brace's stated reasons for firing Michael were pretextual for retaliation. This is where Plaintiffs' claim ends. Brace's evidence that Michael was terminated for being untruthful is wholly unrebutted. Even Michael testified that Brace told him at the time he was let go that he was being fired because he lied. ECF No. 49-2, M. Van Gaasbeek Depo. at 197:7-10 ("Oh, why they let me go . . . . they told me, because I lied about a filing cabinet."). So, Michael's testimony does not show that Brace's proffered reasons for letting him go were false. To the contrary, Michael's testimony confirms why he was fired—dishonesty. Nowhere in his deposition does

Michael testify that the real reason Brace fired him was because his wife complained about sex discrimination.  *See* ECF No. 47-2, M. Van Gaasbeek Depo.  While Michael does allude to Brandy's complaining about sexual harassment on two occasions (which Brandy testified occurred in 2018 at the hands of a non-Brace employee), Michael never connects his firing to Brandy's complaints about discrimination.

In order to show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. BP Oil Co.,* 32 F.3d 520, 526 (11th Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).  In evaluating a summary

28

judgment motion, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs,* 106 F.3d at 1538 (internal quotations and citations omitted).

Plaintiffs in this case have failed to meet Brace's evidence head on and rebut it. Plaintiffs have not submitted or pointed to any evidence that Brace's proffered reasons for firing Michael were false. To the contrary, Michael admits that he lied about having possession of company property, and he testified that Brace told him that he was being fired because he lied. As a result, the unrebutted summary judgment evidence is that Brace fired Michael for reasons unrelated to Brandy's EEOC charge. Plaintiffs have neither directly shown that Brace's proffered reason for terminating Michael lacks credence, nor have Plaintiffs persuaded the Court that a retaliatory reason more likely motivated Brace's employment decision. Accordingly, Plaintiffs failed to create a genuine issue of material fact on the question of pretext, and Brace is entitled to summary judgment on Count III. *See*

*Tamba v. Publix Super Markets, Inc.*, 836 F. App'x 765, 772 (11th Cir. 2020) (affirming summary judgment where plaintiff failed to submit any evidence to rebut defendant's evidence that plaintiff was terminated for violating defendant's dishonesty rule).

### C.    Michael's FMLA Claims (Count IV)

Turning finally to Plaintiffs' two FMLA claims.  First, Plaintiffs allege that Brace denied Michael leave to undergo medically necessary surgery to repair a serious neck injury (FMLA interference claim).  ECF No. 25 ¶¶ 31, 32.  Second, Plaintiffs allege that Brace fired Michael after it realized that he would need substantial time off for neck surgery (FMLA retaliation claim).[6]   *Id.*

---

[6] Brace argues that any FMLA claim arising from conduct that occurred in 2019 is time-barred by the two-year statute of limitations under 29 U.S.C. § 2617(c).  ECF No. 49 at 22-23. In the operative complaint, Plaintiff does reference a 2019 event related to medical leave. *See* ECF No. 25 ¶ 27 ("In 2019, Michael informed Defendant Brace that he needed neck surgery which would require him to be out of work for some time.").  Although Plaintiffs mention 2019, their core allegations are that their claim arising from Michael's need for neck surgery accrued in the Fall of 2020 after Brandy filed her charge of discrimination.  *See* ECF No. 25 ¶ 31 ("In 2020, Michael scheduled his much-needed surgery.  He informed Brace that he was getting the neck surgery and that he would need to be out on medical leave.").  Thus,

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions" of his position.  29 U.S.C.A. § 2612(a)(1).  The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

To protect the rights conferred under the FMLA, the FMLA creates two types of claims: (1) interference claims, in which employees assert that their employer denied or otherwise interfered with their substantive rights under the statute, 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which employees assert that their employer discriminated or retaliated against them because they had engaged in activity protected by the statute, 29 U.S.C. § 2615(a)(2).  *Strickland v. Water Works & Sewer*

---

Plaintiffs' FMLA claims are timely given that Plaintiffs first asserted their FMLA claim in this lawsuit on April 22, 2022.

*Bd.,* 239 F.3d 1199, 1206 (11th Cir. 2001). The Eleventh Circuit has recognized that the FMLA prohibits employers both from interfering with employees' rights under the FMLA (interference claims) and from retaliating against employees for exercising their rights under the FMLA (retaliation claims). *See Strickland,* 239 F.3d at 1206.

As already mentioned, Plaintiffs assert both an interference claim and a retaliation claim under the FMLA.  For the reasons explained below, Brace is entitled to summary judgment on both claims.

1.   Plaintiffs did not provide sufficient notice to support a FMLA interference claim.

Plaintiffs premise their FMLA interference claim on allegations that Brace denied Michael leave for medically necessary neck surgery in 2020. Yet, Michael's deposition testimony establishes that he never requested leave and that he never intended to undergo surgery in 2020.  Without providing sufficient notice to Brace that Michael planned to take medical leave, Plaintiffs have no FMLA interference claim.

The FMLA requires an employee to provide thirty (30) days advance notice of the leave when the need to take leave is foreseeable.  *Cruz v.*

32

*Publix Super Markets, Inc*., 428 F.3d 1379, 1383 (11th Cir. 2005) (citations omitted).  If "30 days notice is not practicable, such as because of a lack of knowledge of approximately when the leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable."  *Id.*

An employee is not required to assert expressly his right to take leave under the FMLA.  *Id*.  However, the notice must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  *Id*.  Once an employee gives "sufficient notice to [his] employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection."  *Id.* (citations omitted).  When considering whether an employee's notice is sufficient, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Gay v. Gilman Paper Co.,* 125 F.3d 1432, 1435 (11th Cir. 1997) (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir.1995)).

In this case, Michael's neck injuries were diagnosed years prior to 2020; yet, he "ke[pt] putting off" the surgery.  ECF No. 47-2, M. Van Gassbeek Depo. at 163:2 & 24.  In 2020, Michael still never asked Brace for medical leave because he was not ready for the surgery.  *See id*. at 159:24-160:2 (Q: Did you, at any point, reach out to Human Resources, to let them know that you needed to take leave under the Family Medical Leave Act? A: No, because I wasn't ready.").  And, although he notified his onsite supervisors that he needed neck surgery in mid-October 2020, Michael never scheduled a date certain for the procedure.  *Id*. at 166:5-8 & 19-21.  When asked if he intended to undergo surgery in 2020, Michael testified, "No . . . I didn't know when I was going to do it. . .  I'll tell you honestly there, I'm afraid to get cut open."  *Id*. at 170:24-171:3.

In light of Michael's testimony that he never asked for medical leave and, indeed, that he never intended to undergo surgery in 2020, the undersigned finds that Brace did not interfere with his FMLA rights.  "The FMLA's notice requirements serve to assist employers in accommodating their employees' absences for certain medical or family reasons . . . .  [A]n employer is entitled to expect that the employee will be cognizant of [his]

34

own job responsibilities as well as the operations of the employer and will give notice as soon as practicable."  *Gay*, 125 F.3d at 1436 (citation omitted).

Viewing the evidence in the light most favorable to Plaintiffs, Michael did not give Brace "sufficient notice" as contemplated under the FMLA. Michael merely alerted his supervisors that he might, at some unknown point in time, require leave to repair his ruptured disks.  That is not enough. *See Krutzig v. Pulte Home Corp.,* 602 F.3d 1231, 1236 (11th Cir. 2010) (affirming summary judgment on FMLA interference claim where "unrebutted evidence" showed that "decision-maker was not aware" at time of termination of "employee's request to commence FMLA leave"); *Lee v. U.S. Steel Corp.*, 450 F. App'x 834, 837 (11th Cir. 2012) (per curiam) (affirming summary judgment on FMLA interference claim where employee "never applied for FMLA leave or gave his employer sufficient notice that his absence was due to a potentially FMLA-qualifying reason."); *Lowery v. Strength*, 356 F. App'x 332, 334 (11th Cir. 2009) (per curiam)  (affirming summary judgment on FMLA interference claim where "the evidence shows that [employee] never applied for FMLA leave.").  Accordingly, Brace did

not interfere with Plaintiffs' FMLA rights, and it is entitled to summary judgment on this claim.

2. <u>Plaintiffs failed to show pretext for their FMLA retaliation claim</u>.

Plaintiffs' FMLA retaliation claim is based on allegations that Brace fired Michael because he needed to undergo neck surgery which would have put him off the job for six to nine months (up to one year). *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 160:15-161:8.

Where a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's discriminatory intent, courts apply the same burden shifting framework set forth in *McDonnell Douglas,* discussed above. *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006). Under the FMLA, the employee "faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory . . . animus*." Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267–68 (11th Cir. 2008) (citation omitted). That means an employee must show "intentional retaliatory animus on the part of the employer because the employee attempted to invoke FMLA rights." *See Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 840 (11th

Cir. 2015) (per curiam).  Close temporal proximity between an employee's protected conduct and the adverse employment action is generally sufficient to create a genuine issue as to whether there is a causal connection sufficient to support a prima facie case. *Hurlbert,* 439 F.3d at 1298.

In the case at bar, even though Michael never gave Brace a date certain for his neck surgery, Michael did discuss his need to take medical leave with his supervisor mid-October 2020.  *See* ECF No. 47-2, M. Van Gaasbeek Depo. at 173:22-174:21.  The close temporal proximity between Michael's conversation with his supervisor about his need for neck surgery (mid-October 2020) and Michael's termination (November 4, 2020) is sufficient to establish a causal connection between Michael's protected activity and Brace's adverse employment action to establish a prima facie case of FMLA retaliation.  *See Hurlbert,* 439 F.3d at 1298.

Thus, Plaintiffs have made out a prima facie case of FMLA retaliation, and Brace must come forward with a non-retaliatory reason for terminating Michael.  As discussed above, Brace has met its burden in this regard. Brace's proffered reason for terminating Michael was that he was not

forthcoming about a host of work-related issues, which were separate and apart from his need to take medical leave. *See* ECF No. 49-1, Blawusch Decl. ¶¶ 12-15. Thus, Brace has rebutted the presumption of FMLA retaliation.

That means Plaintiffs must put forward some evidence that Brace's profered reasons were pretextual for retaliation because Michael needed surgery. As was the case with Plaintiffs' FCRA retaliation claim, Plaintiffs' silence on pretext is fatal. Although the close temporal proximity between Michael's protected activity and Brace's adverse employment action was sufficient to create an issue of fact with regard to Plaintiffs' prima facie case, it alone does not establish pretext. *See Hurlbert*, 439 F.3d at 1298 (close temporal proximity standing alone is insufficient to establish pretext).

In this case, no other evidence supports the notion that Michael was fired because he needed medical leave. As already discussed, Michael never intended to undergo surgery in 2020. Additionally, Michael did not testify that he was fired because he needed neck surgery. *See* ECF No. 47-2, M. Van Gaasbeek Depo. Instead, Michael's testimony confirms that he was fired because he was found to be dishonest. *Id*. at 197:9-23.

Additionally, Brandy never testified that Michael was fired because he needed neck surgery. *See* ECF No. 47-1, B. Van Gaasbeek Depo. Thus, the unrebutted summary judgment evidence is that Brace fired Michael for reasons unrelated to his need for medical leave. Accordingly, Brace is entitled to summary judgment on Plaintiffs' FMLA retaliation claim.

## IV.    CONCLUSION

In view of the foregoing, the Court concludes that Brace is not entitled to summary judgment on Count I. Brace is, however, entitled to summary judgment on Counts III and IV. Judgment should, therefore, be entered in favor of Brace on Counts III and IV, and Plaintiffs should be allowed to proceed on Count I.

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, ECF No. 49, be **GRANTED IN PART** and **DENIED IN PART.   SUMMARY JUDGMENT** should be entered in Brace Integrated Services, Inc.'s behalf on Counts III and IV, and should be **DENIED** as to Count I. Plaintiffs should be permitted to proceed with Count I, and the

case should be **REMANDED** to the undersigned for further proceedings on that Count.

      **IN CHAMBERS** at Tallahassee, Florida, on June 7, 2023.

              s/    Martin A. Fitzpatrick
             **MARTIN A. FITZPATRICK**
             **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).**

      **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**